The next case is Nature's Touch Frozen Foods v. United States. Mr. Peterson, when you're ready. Thank you. The last time I appeared before Your Honor, I was given the accommodation of speaking from counsel's table. But I'm going to try it here today. I think we can do it. Let's find out together. Well, feel free if you need to sit down. Well, I'm told if I get through this at counsel's, today is physical therapy. Great. Well, I'm glad you're feeling better. Thank you. This is a case about the tariff classification of frozen fruit mixtures. They're imported in retail bags. You can buy them at your local grocery. Our client, Nature's Touch, puts these together through a process in British Columbia. Now, customs and liquidation classified these mixtures using general rules 3B and C of the tariff heading. They said, there's no particular tariff heading that covers these, so we're not going to classify them under GRI 1. We're going to resort to 3B and 3C. And so the products were classified under various provisions based on that single fruit ingredient, which was deemed to impart the essential character. Our protest suggested that no. There is a specific classification that will allow you to classify these things under general rule of interpretation 1, and that was the provision in heading 2106-9098 for other fruit preparations not especially provided for. Now, the trade court went in a totally different direction and came up with a decision that seems to be unprecedented in 245 years of American customs law. What the trade court said was that the basket provision for other frozen fruits in heading 0811.90.80, which would not cover most of these fruits if imported individually, does cover a mixture of goods which would not otherwise be classifiable in that heading. Now, that's just unprecedented. We've never found... Unprecedented, of course, doesn't necessarily mean wrong. Help me with that. The logic seemed to be that fruit has an accepted meaning broad enough to include mixtures of fruit. And when we use fruit in common parlance as bowl of fruit or, you know, cup of fruit, we could mean multiple fruit, types of fruit. What's wrong with that reasoning? Well, the reasoning is that the lower court treated the word fruit as an a-l-m-a provision, an a-l-m-a classification. It is not. It is a classification by general description. Well, either way, what's wrong with my general description? My general description of fruit says there's a bowl of fruit over there. It's not necessarily limited to one type of fruit, is it? Well, the problem is that the lower court took the general description language in the four-digit heading and let it into the more specific a-l-m-a provision that appeared in the six- and ten-digit headings. That's erroneous. Now, after the case... Hold on. I think the law is pretty clear. You start with the heading level before you even think about subheadings. Isn't that correct? You do. But the question is, do we have a-l-m-a provisions that cover that? If you just said, well, the word fruit in the four-digit heading covers all fruit, there wouldn't be any need for six- or eight-digit headings, and the drafters would not have crafted them. Now, in our brief, we go into a rule that says unless you have a commercial designation at issue, which is not the case here, an a-l-m-a provision will always prevail over words of general description. Now, we used the... Can I just get you back to your statement that this is unprecedented to put mixtures of frozen fruits in this other category? Because I don't think it is. We found no situation where that ever happened. Maybe I'm just misreading these rulings, but in a letter to you dated February 7, 2020, they discuss this specific issue, and they tell you, and this may be another case, but it's still a letter directly to you with this importer, talking about this food preparation issue versus 811, and says it doesn't belong in food preparation. It belongs in 811. It cites four different rulings that, as far as I can tell, classify fruit mixtures as other other. Part of the problem with that, Your Honor, is that Customs relied in part on a ten-digit provision in that subheading. Okay. That talked about fruit mixtures. It's not part of the tariff. I don't understand that answer, but let me say I'm prefacing this by what Customs did in this case seems out of pattern with what they've done in these other cases, which getting to the GRI-3, they didn't do in these other cases. But, for instance, a tariff ruling from September 8, 2003 that they cited in this letter to you says the applicable setting for mixtures of frozen and the mixture of... Sorry, that's a different one. Frozen fruit medleys contains blackberries, strawberries, and peaches. That one is 811.90.80.80, and it says will be classified as other other. That's what the trade court is saying here, right? No, no, no. Those are Customs rulings. This is, to my knowledge, the first time the trade court has accepted that letter. But this isn't unprecedented for Customs to do it. In fact, it's a pattern. I have four of these rulings sitting here before me that were cited to you in this February 7, 2020 letter, which I'm sure you're familiar with, where Customs routinely classifies frozen fruit mixtures as other other. Now, they didn't classify them in this case that way. They have since the 2020 ruling classified them that way. And, you know, this court's ruling, but in this case... So you're saying this ruling predates all of these letters? Yes. Okay. Okay, I get that. But at least now they have a... So they're basically following what David told them to do. Before the trade court, after we had had a little argument, and obviously the briefing had come in, the judge asked the parties to go to a Zoom conference and raised this concept. Could mixtures go into 0811-9080? The plaintiff submitted a brief saying, no, that's not correct. That's not the way the mixtures provision works. The government submitted a brief saying the same thing. Okay? Both sides agreed, at least at the trade court level, that that was not a proper interpretation of the tariff. So your position and the government's position was that other, other was reserved for other single frozen food not otherwise identified? That's correct, and that is what we think is the correct reading of the 0811-9080 provision. Okay, so let me ask you this. I know you want to push this food preparation issue. For purposes of these questions, let's just assume I disagree with you, that you haven't done enough transformation of these to make it a food preparation. You've preserved your argument on that. I'm not interested in hearing from that at this point. You can move on to it after I've asked you my question. If that's the case and that food preparation classification is off the table and they belong in 0811, how do they belong in 0811? Do they belong in the other, other, the way Customs is doing it now? No. Or do they belong under GRI-3, which is what Customs did the first time? They don't belong in either place. They belong under heading 2106. Mr. Peterson, you have to respond to my hypothetical. I know you're pushing that argument.  Let's just assume this is wrong and they can't go in food preparation. They do go in 0811. How do they go in 0811? It would be by a construction that says, strangely enough, that a provision that excludes most of the named vegetable fruits from its classification covers some or all of them. I think the question is, which subheading under 0811 would they go under? I agree with that. If you discount. . . I'm giving you two choices. The choice is either other, other, as the trade court found and Customs is doing now, or GRI-3, as Customs did initially. Which one of those do you think is the more correct? GRI-3. Very unquestionably. Okay. Why? Huh? And why? Well, because if you look at the tariff, the drafters did create a number of GRI-1 provisions covering things like mixtures of vegetables, mixtures of fruit. Okay. They spared classifiers from going through the contents of the salad to say, well, what's the essential character component? They didn't do that with frozen fruits. We don't know why. There's no GRI-1 provision talking about mixtures of frozen fruits. So what do you do? Now, in the absence of that, Customs went and said, we're going to use GRI-3. All right. But we said, wait a minute. This court's rulings say that if you can classify something under GRI-1, you must classify it under GRI-1, and that the remaining notes, including 3A and 3B, are inoperative to quote the court's audit products rule. So this resolves into the question, then, which, as your Honor pointed out, we've preserved, is whether we have a prepared or preserved food product. I guess what I'm asking is, isn't it a better, more easily applicable rule if we use the other-other rather than GRI-3? Because it seems to me that if we're going to go to the lowest level under GRI-3, that that is much more subject to manipulation than just using the other-other category. There's no indication the drafters ever intended the other-other category to be used for mixtures. When you have a GRI-1 provision. Okay, I understand that. But what if we, this is a situation where the drafters didn't contemplate mixed frozen fruit mixtures whatsoever. But also, again, we don't think the food preparation applies. We've got to put it somewhere. Well, then you would go to GRI-3. Okay. I think that would be. . . If that's the conclusion we reach, which I understand you don't want us to reach, what do we do, remand for application of GRI-3? Well, if you go with GRI-3 remand, if you agree with 2106.90.98, you can reverse. Now, if I may speak for a moment to the food preparations. You can, but you're into your rebuttal time. Oh, I'm sorry. Very quickly, this court in the RT Foods case says that it's an expansive basket provision that only applies in the absence of any other appropriate heading. No minimum level of processing is required, and a simple mixture will do it. The Arbor Fruits case, you know, 98% sugar and 2% gelatin was a food preparation. So a lot of preparation work is done to get these products in their condition. They're grown, harvested, reduced in size, subjected to phytosanitary testing, blended according to plant flavor and color palettes. If you went to a salad chef here in town who prepared this for you, I think he would say it's a food preparation. Thank you, Your Honor. Thank you. May it please the Court. This appeal presents a simple issue of statutory interpretation, whether the term fruit in heading 0811 covers fruit of all kinds and mixtures of fruit. So can you just tell me why you switched positions from what Customs did to what we're at now? I understand that Customs – so I didn't follow the timeline in here, but is Mr. Peterson correct that all these rulings that I'm looking at are after the one in this case? I couldn't say as to all of them, Your Honor, but I will say that our position now is that the trial court got it correct. I understand that. Why? It got it correct because actually under – we always try to classify under GRI 1 whenever possible. And so the Court used its analysis that GRI 1 you still classify under the other because you're looking at strawberries and raspberries, and if any of those subheadings don't describe the product in whole, then you must put it under the other provision. And that follows R.T. Foods doing a similar analysis that they don't describe the product in whole. I mean, it's like – this case doesn't fit very comfortably in anything, but it seems a little bit strange because when it's talking about other, it's just referring – under the subheading of other, it just has a bunch of other single frozen fruits. And then when it talks about a mix, it has a specific mix, and then it has other. So to me, that doesn't naturally read as mixed fruit. It means as other unidentified single fruit, which is what you originally – Customs originally found. And then that's why they went to GRI 3. Yes, Your Honor. So what's your best argument for why the trial court is correct that other, other, applies to all fruit of any kind that's not specifically covered by any of the things above? Sure, Your Honor. So if we go back to GRI 1, and we found that the term fruit encompasses mixtures, like Judge Stark used the example of a bowl of fruit, passing a bowl of fruit, it could have a number of different kinds of fruits. But actually, this also applies to the term nuts. And nuts is also in the plural form. And also, if one said passing a bowl of nuts, it implies that's the plain meaning. Is that why fruits and nuts are together, or is it for some other reason? I don't know why they're together, Your Honor, but they are together in here, fruit and nuts. So actually, we look at the plain meaning of 0811. The term fruit encompasses mixed fruit, and the term nuts encompasses mixed nuts. And the heading encompasses – so that means we're done with GRI 1. We've established that the heading covers mixed fruit and mixed nuts, and also fruit and nuts. And when we go to the subheadings, and we note that there is no subheading for nuts. Isn't that interesting? Because that means nuts will go under the other, whether it's a single nut or mixed nuts. So now that we've established that the heading covers mixed fruit, all the subheadings have to, because we can't narrow or expand the meaning of the term heading. Let me make sure I follow that. The nuts, because there's no subheadings for nuts whatsoever, automatically default into other, other. Yes, Your Honor. And so that must encompass any kind of nut, including mixtures, because it's not – that does show that there's not just single nuts identified, and that this is meant to encompass other single nuts that were unidentified. Correct, Your Honor. And that applies also to the fruits. So if there's any fruits that are mixed with nuts, they would go under other, other. Anything that has a nut in it would go under other, other. So we know that the heading encompasses all types of mixed fruits, all types of mixed nuts, mixed fruits and nuts. And also, this is really – it's the only heading that talks about frozen fruit. So there's no other home for it. That just confirms that the plain meaning – we always assume that the drafters intended the plain meaning, and there's no exclusion that mixed fruit cannot fit in here. So for all those reasons, this is the home for frozen fruit mixtures and frozen fruit and vegetable mixtures. I mean, it certainly – no, go ahead. The subheading, the other subheading, I think you're now advocating it means none of the above. Is that a fair characterization of the government's position now? Yes, Your Honor. That's also the trial court's finding and determination following a line of cases that show that the other provision means none of the above. In other words, none of the preceding headings describe the product in whole. And if we adopt that here, would we be saying that wherever other is used across the HTS, it always means none of the above? It should if it's a similar structure like this. Other should mean none of the above. Other should mean none of the preceding subheadings describe the product. That sounds like you're asking us to make a broader thing than we need to. Other just means things not identified above, not none of the above. I mean, maybe that's – Yes, Your Honor. It's a linguistic, you know, difference without actual effect. But I would be concerned that if we said other means none of the above, that it might play out differently in another context. Yes, Your Honor. I think the better reading is none of the preceding headings describe the product in whole. And that's going with GRI 1, that the heading and the subheadings must describe the product in whole in all that line of cases. And if we said that much with that precision, should we have some concern that that's going to cause damage with other provisions elsewhere in the HTS? I don't think so, Your Honor, because as the court cited, the whole lines of cases for GRI 1 means it must describe the product in whole. And then we also have a line of cases like in RT Foods where, you know, there was a product that had one of the ingredients was not listed in the subheading, so then it was classified in other even though another of the ingredients, the antipasto and the beans, weren't in the subheadings. But because it had more than just one of those two, it was put in the other. And we believe the trial court is correct in following that analysis. Do you want to respond briefly to his food preparation argument? Yes, Your Honor. So it's not food preparation for various reasons. First, we know that we concede that these products are food. But that also means that it must be more than just food in order to be a preparation. Otherwise, it would render the term food surplusage. So what constitutes a preparation? There's several different tests. One of the tests is from Orlando Food that says that the food preparation must have an aspecific use. And here we have a number of different uses. They're very wide ranging. That's at the appendix 189. These products have a wide range of possible end uses. They're used for many purposes. Smoothies, fruit salads, toppers for oatmeal, cereal, waffles, yogurt, sauces, chutneys, sorbets. So these are many different uses. And finally, plaintiff admits that plaintiff does not know how a customer will ultimately use the products at issue. So because it's such a wide variety of uses and it's not a specific use and some uses are unknown, that's not meeting the definition of specific use. A specific use must be something that's not unknown and you could use it on almost anything. We have to decide whether 0811 is an AO nominee provision or just a general description. Does it make a difference to the outcome of this appeal? I don't believe it makes a difference, Your Honor. We do believe it is an AO nominee provision because the terms at issue here are frozen fruit and nuts, frozen nuts, frozen fruit, mixtures of frozen fruit and nuts. And so that's more specific than headings that are of general description. But regardless, it is an AO nominee provision. We look at the plain meaning of fruit and nuts and it encompasses mixtures of either or both. I just have one other question. The blue brief at page 30 says that historically whenever Congress wanted a tariff provision to embrace mixtures, it expressly so provided by including the word mixtures in the heading or in the provision elsewhere. Is that historically correct? And if it is, should that impact our decision? I don't think so, Your Honor. That's a very broad generalization. I don't believe that's correct in I think a number of headings. We go back to what is the definition of an AO nominee provision, and it will include any products that are described in whole by the plain meaning. So we always have to assume that the drafters intended the plain meaning, and so because the plain meaning of fruit encompasses mixtures, and here in the heading 0811, it also encompasses mixtures. Let me ask you a hypothetical. What if it was a mixture of various berries plus sugar plus a thickener to be sold as pie filling? Is that a food preparation? I'm not going to venture out and have a specific definition of what are the processes that make something a preparation. There are lots of different processes. If we look at EN 21.06, there were, I think, 20 or so different types of processes. We can compare those processes to here. A lot of them have chemical preparations. In your example, there's something else that's injected into the food preparation. That at least is closer to a food preparation. Yes, Your Honor. I would say it's not very much. Right. You only have the thickener for pie filling. Right. That would be much closer, for sure, to a food preparation. Here, all we have is frozen fruit. The fruit arrives in Canada, and it's just frozen, and it's already cut for most of them except for the blueberries, and all they're doing is putting them in a package, like some berries and some kale are put in a package. That's it. That's not a food preparation. Again, also because there's not a specific use. In Orlando food, we had canned tomatoes that were considered a food preparation because they were then going to be used for a specific use of being used as a tomato sauce base. We don't have that here. Also, the food here is consumed as such, and there's an EN that explains 21.06, paragraph 15, that excludes mixtures of cut fruits and vegetables from heading 2106 if they are fit for consumption as such. EN, an evaluation note or explanatory note? Explanatory. Thank you. Thank you, Your Honor. I apologize. Can I go back to the e-nominee issue? Am I right in believing that the trial court found that issue had been waived? About the e-nominee versus general provision? Yes, the general one. I'm not sure, Your Honor, to be honest, but I know it was included here. If it wasn't included in the trial court's decision because of waiver, then we would submit that that would also be waived at this level. Thank you. Do you have anything else? Let's see if I can maybe respond to some of the other arguments that have been made. We also note that other is a basket provision. So, again, there's lots of case law showing that that's where you put something when the previous subheadings do not describe the products in full. And all of the products are appropriately classified under 0811. The all fruit mixtures are by GRI 1 classified in 0811, and the fruit and vegetable mixtures by GRI 3B because they have a different composition of vegetables and fruit. But the fruit predominates. So those are also under GRI 3B classified in 0811. Now that we have all of the mixtures in 0811, we just go back to GRI 1, and they're all classified under GRI 1, under other, and then other again at the six- and eight-digit subheading levels. Finally, we can confirm that frozen mixtures are included because it says so at 0811.90.80.85. And that doesn't inform our understanding of the plain meaning, but it sure confirms that frozen mixtures are provided for here. As it states, frozen mixes only of combinations of strawberries, et cetera. So that also dovetails with our argument that mixtures of frozen fruit and nuts are all classified in this heading. To conclude, this court should affirm the trial court's sound judgment because the undisputed facts show that the subject merchandise is described and held by the tariff term's fruit, frozen, of heading 0811. And it's further properly classified under subheading 0811.90.80. And the trial court committed no legal error in interpreting the tariff term's fruit, other, and food preparations, as those terms are defined by dictionaries, the explanatory notes, and the legal standards set by this and other courts. Thank you.  Mr. Peterson, you've got a little over three minutes left. I'll try to make it work. If I may first, I'd like to address Judge Stark's question about whether or not the term fruit is an aonominate provision. It's not, and there's an easy way to see this. If you walk into the market and you say to the keeper, I'd like to buy one fruit, they're going to look at you, and then they're going to say, what fruit do you want? Name it. So fruit is just a general description term. If I say I want a boysenberry, okay, now I've named the fruit. So you see these aonominate provisions at the six- and eight-digit level here. But at the four-digit level, that term fruit is not an aonominate provision, and the lower court was wrong in saying that 0811.90.80 covered our products, quote, in whole. Was this held in that mode in your opening brief? Oh, yes, and I think we drove it home a little stronger in the rebuttal brief, but it's not an aonominate provision. Now, the other thing to bear in mind here is Congress means what it says, and it created plenty of provisions for mixed fruits and mixed nuts, just not one for a thousand. If you look at footnote two on page 11 of our principal brief, they're all over there. What about nuts? Well, heading 0813 contains provisions for mixtures of nuts. 0813.50 is mixtures of pea pods and chestnuts. So, yeah, they have it, but they didn't do it for frozen fruit. They didn't do it for frozen nuts. Now, I'm not aware of why anyone would freeze nuts. Yeah, me either. That's probably why there's no specific, you know, subheadings with the nuts. But can you tell me why it really matters? Assuming that food preparation is out, why does it matter whether frozen fruit is a aonominate or just a general descriptor? Well, it matters because of the question of mixtures. When the draft gives you the tariff and Congress re-enacts the tariff, it means to cover a mixture and a specific rate of duty. They do it, and we know it from looking at that footnote in our brief. They know how to do it. Well, I think I have the same question as Judge Hughes. If we're in an 0811 world, just assume for the moment you lost on the 2106 argument, why does it matter if fruit is a aonominate or general description? You're going to end up somewhere in 0811 anyway. Well, no, not necessarily, because the important thing is … Where else could you be? It would go by generalize 3B if you don't put it in the food preparation. But we're already in 0811. Doesn't that mean you're going to end up in it? If that was our ruling, that 0811 is right and 2106 is not, you're going to end up in a tariff subheading somewhere under 0811, correct? Oh, yeah, but that would be a real problem of statutory interpretation because Congress expressly intended not to include a mixtures provision in 0811. What the lower court realizes implies one. Can you tell me what we do with that if we determine the food preparation one isn't applicable? Okay, it's a very simple decision. If it doesn't go into 0811 and it doesn't go into food preparation, where does it go? Well, it has to be classified. Look, if it goes into GRI 3B or 3C, it won't go into 0811 98. It will be classified according to that single fruit that imparts the essential tariff. But it does 0811. It would be in 0811. That's what I'm asking. Why does it matter whether it's aonominate or not? It's going to end up in 0811. Well, because if the 0811 blueberries definition is the blueberries are the essential tariff, that mixture is duty free. If you say, well, I'm just going to dump it all in 90, then the duty rate is 14.9%, and Congress never intended that. Okay. Thank you, Mr. Peterson. Thank you. The case is submitted.